UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KAREN MCNAUGHT,<br>    Plaintiff, | )<br>)<br>) | |
| v. | ) | Civil Action No. 07cv10713-NG |
| UNITED STATES OF AMERICA,<br>    Defendant. | )<br>)<br>) | |

GERTNER, D.J.

## MEMORANDUM AND ORDER RE:
### FINDINGS OF FACT AND CONCLUSIONS OF LAW
December 22, 2009

**I.   INTRODUCTION**

This case is about a fall at the Walpole, Massachusetts, Post Office ("Post Office") on March 5, 2005. The plaintiff, Karen McNaught, walked out of the Post Office building, missed the first step, and tumbled to the bottom of the stairs. She claims that if there had been a center or "intermediate" handrail on the stairs, she would have grabbed onto it, and thereby broken her fall and minimized her injuries. Instead, she fell hard, shattered her femur, incurred substantial medical expenses, and was out of work for some time.

The defendant is the United States of America. Ms. McNaught sues under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.[1] Jurisdiction exists under 28 U.S.C. § 1346(b)(1). A bench trial was held over three days. This opinion comprises my findings of fact and conclusions of law.

---

[1] The plaintiff's initial complaint alleged three causes of action. In addition to her claim under the FTCA, she claimed violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the Architectural Barriers Act ("ABA"), 42 U.S.C. §§ 4151-4156. The plaintiff opted not to press these claims at trial, conceding to the government's position that neither the ADA nor the ABA affords her a private right of action. As a result, the Court's decision will focus exclusively on the plaintiff's claim under the FTCA.

The case raises the usual issues: the duty of care owed to the plaintiff by the United States; whether that duty was breached; whether the breach was the cause of the plaintiff's injury; and, whether the plaintiff suffered damages. Let me say at the outset that there was no doubt of the latter. Ms. McNaught was badly injured, with serious consequences to her life. The contest in this case concerns the remaining issues -- whether, and to what extent, local and state building codes should play a role in defining the duty of care owed by the Post Office to invitees; whether the defendant breached those standards by not providing an intermediate handrail; and finally, whether the failure to construct an intermediate handrail was a proximate cause of Ms. McNaught's injury.

I find, as did Judge Stearns in a comparable case, Selby-Gardner v. United States, No. 03-11134-RGS, 2006 WL 2827646 (D. Mass. Sept. 30, 2006), that I may consider the Post Office's failure to comply with local building codes that required an intermediate handrail as some evidence of the United States's negligence. Id. at *3-4. While the Walpole Post Office was "grandfathered" into code compliance because an intermediate handrail requirement did not exist at the time it was built in 1937, modern building codes that bear on the safety of the means of egress from a building are, at a minimum, relevant to the question of the defendant's duty of care.

But I cannot find either breach of duty or causation on the facts of this case. As plaintiff's own expert indicated, installing an intermediate handrail could well have created a "bottleneck" at the top of the stairs, unreasonably interfering with the ability of patrons to easily enter or exit the building. Thus, for the government to install an intermediate handrail at the Walpole Post Office, it would likely need to redesign the Post Office's entire entryway, including the Post Office's door and perhaps even the steps themselves. Since installing an intermediate handrail would probably

require significant modifications to the Post Office building, the plaintiff was obliged to present evidence of what such a redesign might consist of and its cost, which she could not do.[2]

Nor was there any evidence that the absence of an intermediate handrail was the proximate cause of Ms. McNaught's injuries. Ms. McNaught missed a step and fell to the bottom of the stairs. She did not testify, as had the plaintiff in Selby-Gardner, that she reached out for a railing of any kind. See Selby-Gardner, 2006 WL 2827646, at *4. Moreover, the testimony and evidence presented at trial -- including the testimony of Ms. McNaught and eyewitness Wendy Pruell and the evidence of the plaintiff's considerable size and weight -- point to an uncontrolled fall, one that would have occurred even if an intermediate handrail were available. Cf. id. (finding against the plaintiff on the issue of proximate cause).

One preliminary note: Apart from the formalities of negligence law, it is shocking that the United States is content with its buildings being "grandfathered" into compliance with local codes.

---

[2] The plaintiff's expert, Walter B. Adams, testified on direct examination that it would cost about $500 to install an intermediate handrail at the Walpole Post Office. Cross examination revealed that, given the Post Office's current design, installing an intermediate handrail would likely cause the "bottleneck" described above, thus necessitating an entire redesign of the Post Office's entryway. When the plaintiff's counsel sought to question Adams about the cost of that redesign on redirect, the defendant objected. Adams had never offered an alternative design which included both the doors and the handrail nor provided cost estimates regarding such a redesign in his expert submissions under Federal Rule of Civil Procedure 26(a)(2). Clearly, it was the plaintiff's burden in the first instance to show that the Post Office could, at a reasonable cost, have reduced the risk of injury to its patrons by providing an intermediate handrail that would not have unreasonably interfered with egress from the building. See, e.g., Mounsey v. Ellard, 297 N.E.2d 43, 52 (Mass. 1973) ("A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." (quoting Smith v. Arbaugh's Rest., 469 F.2d 97, 100 (D.C. Cir. 1972))); Adams v. Town of Stoneham, 79 N.E. 881, 881 (1907) ("[T]owns are not required to incur disproportionate and unreasonable expenses in keeping their streets reasonably safe for travel . . . ."); see also United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir. 1947). The fact that the problem with egress was brought out on cross examination does not change the fact that the issue of how much it would cost to redesign the Post Office's entryway to reduce the risk of injury to patrons was part and parcel of the plaintiff's initial burden and should have been the subject of its Rule 26 disclosures.

More shocking still is that the Post Office does not comply with the ADA or the ABA.[3] The federal government, which should be the paragon of accessibility and safety on all fronts, was not. And since this is the second case to express concern about the United States' failure to install an intermediate handrail at a post office building, one can only hope that in the future, it will take steps to make its buildings safer and more accessible to the public.

## II. FINDINGS OF FACT

### A. The Accident

Karen McNaught, a 69 year old widow, was mailing a package to one of her children on Saturday, March 5, 2005. At the time of the accident, she weighed at least 200 pounds and was 5' 7" tall.[4] Her medical history is somewhat complex -- a gastric bypass, a diagnosis of multiple

---

[3] The government sought to prevent the plaintiff from presenting any evidence that the Walpole Post Office failed to comply with the requirements of the ADA, the ABA, or state building codes. (Def.'s Mots. in Limine, document #37-38.) As explained in further detail below, the Court concludes that modern building codes provide some evidence of the standard of care that the United States owed Ms. McNaught, even though those codes are not formally applicable to the Post Office. Although the Court places little weight on the issue, it also concludes that it can consider the United States's violations of the ADA and the ABA, to the extent they were proved by the plaintiff, as *some evidence* of the United States's negligence. The Court recognizes the First Circuit's statement in Sea Air Shuttle Corp. v. United States, 112 F.3d 532, 536 (1st Cir. 1997), that the United States cannot be held liable under the FTCA based solely on its failure to carry out a federal statutory duty. But the plaintiff is not trying to hold the United States liable for a breach of a federal statutory duty. Instead, the plaintiff offers the requirements of the ADA and the ABA as some evidence of the type of precautions that a reasonable landowner would take to ensure the safety of individuals who lawfully enter his property. Sea Air is thus distinguishable from this case because the plaintiff in Sea Air challenged "the FAA's alleged failure to perform its regulatory functions vis a vis an entity that is out-of-compliance with federal laws and rules." Id. at 537. Here, no such "uniquely governmental" function is implicated. Id. at 537 n.12. Ms. McNaught claims that the United States was a negligent landowner, a status held by many individuals not remotely affiliated with the government. The Ninth Circuit's decision in Delta Savings Bank v. United States, 265 F.3d 1017 (9th Cir. 2001), is also distinguishable because this is not a case where the plaintiff is trying to argue "that a state law negligence per se action can be premised on [a] duty arising from [a] federal statute." Id. at 1026. Instead, the Court looks to federal requirements only insofar as they can help inform its determination of the scope and content of a landowner's independent state-law duty to exercise reasonable care. Just as the Court can consider state building codes in evaluating the standard of care required of the United States, so too can it consider the requirements of the ADA and the ABA.

[4] There was substantial variation as to whether Ms. McNaught's weight at the time of her fall was 200 pounds or greater. For example, a "Preprocedure History and Physical and Anesthesia Record" from Beth Israel Deaconess Medical Center that is dated March 5, 2005 (the date of Ms. McNaught's fall) reports her weight as 285

sclerosis rejected in 1997, arthroscopic surgery on her knee -- but there is no indication that this history had a role in the events of March 5, 2005.

Although Ms. McNaught's work schedule was demanding, the Court finds that it was not a factor in the accident. She worked four nights a week, 8:00 p.m. through 6:00 a.m., as a nurse for a severely disabled child. On the morning of Thursday, March 3, 2005, she returned from that job, and slept most of the day. She then worked a 7:00 p.m. to 7:00 a.m. shift with foster children. She stayed up all day Friday, went to bed at 8:00 p.m., and slept for eight hours. By the time she went to the Post Office on Saturday morning, she was well rested.

Ms. McNaught had been using this Post Office for forty years, and never used the existing handrail on either side of the stairs. While it had snowed earlier in the week, the Post Office had fully cleared the snow from its steps, according to William Sheehan, Postmaster of the Walpole Post Office at the time. There was no ice or snow, or even residual salt, on the staircase. Nor was there a defect in the lip of the stair, as plaintiff claims.[5] The weather on March 5, 2005, was sunny and clear.

Based on Ms. McNaught's testimony and that of Ms. Wendy Pruell, an eyewitness to Ms. McNaught's fall, it is clear that Ms. McNaught simply missed a step. The accident, as Ms. McNaught stated in her own testimony, "just happened."

### B.     The State Building Code

---

pounds. Trial Ex. 6 (Medical Records of Karen McNaught).

[5] At one point the plaintiff suggested that she had caught her heel on a defect in the "lip" of the stair, a contention which is belied by the record. She was wearing sneakers at the time of the accident, and sneakers are not the type of footwear in which one tends to "catch a heel." The Court also concludes that the plaintiff's evidence failed to show that any defect existed in the "lip" of the stair.

"The United States Postal Service is not as a matter of law bound by state or local building codes." Selby-Gardner, 2006 WL 2827646, at *4. However, the United States' failure to comply with a state building code "may constitute some evidence of negligence," even though such failure is "not by itself sufficient to establish liability." Id.

There is no dispute that the sixth edition of the Massachusetts State Building Code ("the Code"), which was in effect at the time of Ms. McNaught's fall, would have required any newly constructed building with stairs as wide as those at the Walpole Post Office to have an intermediate handrail. 780 Mass. Code Regs. 1014.7 (1997) (Trial Ex. 8). However, the Code requires intermediate handrails for buildings constructed prior to 1975 *only* where the building code in force at the time of the building's construction required the installation of such handrails. Id. at 3408.1.2. Because no code requirement mandated handrails in 1937 when the Walpole Post Office was built, the Post Office could continue to operate without such a railing and still remain in full compliance with the building code. See id. at 102.5.2 ("[U]nless specifically provided otherwise in 780 CMR, any *existing building* or *structure* shall meet and shall be presumed to meet the provisions of the applicable laws, codes, rules or regulations, bylaws or ordinances in effect at the time such *building* or *structure* was constructed or altered and shall be allowed to continue to be occupied pursuant to its use and *occupancy*, provided that the *building* or *structure* shall be maintained in accordance with 780 CMR 103.0.").

### III. LEGAL ANALYSIS

The liability of the United States under the FTCA, if any, is governed by the law of Massachusetts. 28 U.S.C. § 1346; Goldman v. United States, 790 F.2d 181, 182-83 (1st Cir. 1986) (noting that under the FTCA, the United States' liability is governed by the law of the state

where the allegedly negligent act or omission occurred). Under the FTCA, the federal government is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

Someone who owns land "owes a common-law duty of reasonable care to all persons lawfully on the premises," a duty which includes the obligation to maintain the property in a "reasonably safe condition in view of all the circumstances." O'Sullivan v. Shaw, 726 N.E.2d 951, 954 (Mass. 2000) (quoting Mounsey v. Ellard, 297 N.E.2d 43, 52 (Mass. 1973)). Specifically, to recover for an injury caused by a defect in the premises, a plaintiff must "prove by a preponderance of the evidence that her injuries were proximately caused by an unsafe condition which the defendant created, had actual knowledge of, or should have discovered and corrected in the exercise of ordinary care." Selby-Gardner, 2006 WL 2827646, at *3 (quoting Freitas v. Home Depot U.S.A., Inc., No. 9639, 2000 WL 910872, at *1 (Mass. App. Div. June 28, 2000)).

To be sure, a finding of negligence must not impose an "'unreasonable standard of perfection' on the Untied States (or any other landowner)." Id. (quoting Goldman, 790 F.2d at 184). "A landowner . . . is not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." Gadowski v. Union Oil Co., 326 F.2d 524, 525 (1st Cir. 1964).

With these standards in mind, I turn to the evidence. The parties spill much ink over the question of whether, and to what extent, Massachusetts building codes help define the United States' duty of care to Ms. McNaught. First, the Court notes that this is not a case of negligence per se. As noted above, the Walpole Post Office, were it a non-federal building subject to

Massachusetts's building codes, would have been grandfathered into compliance with those codes because it was constructed at a time when an intermediate handrail was not required.

The fact remains, however, that modern Massachusetts building codes would require a newly constructed staircase as wide as the Walpole Post Office's stairs to have an intermediate handrail.  The question then arises:  To what extent may a court consider modern statutes and regulations in determining the standard of care required of a defendant who is explicitly exempted from those statutes and regulations by a grandfather clause?  The case law on this issue is sparse.  The plaintiff cites Perry v. Salem Housing Authority, No. 03-P-1250, 2004 WL 2026820 (Mass. App. Ct. Sept. 10, 2004), an unpublished decision that addresses the question of whether a modern building code can be considered in determining whether a landowner has maintained his property in a reasonably safe condition, even though the landowner is bound by a less stringent version of the code.  The Perry Court held:

> The judge correctly ruled that the fourth edition of the State building code, which was the version in effect when the premises were built, was, as a general matter, the applicable code, but that provisions contained in the sixth edition, which was in effect at the time of the accident, nevertheless were relevant and could be called to the jury's attention.  Although the sixth edition generally 'grandfathers' existing buildings, it also provides, in substance, that any means of egress that was acceptable under the code when the building was constructed may be required to be upgraded if it is not safe under current standards.  See 780 Code Mass. Regs. § 1004.2.1 (1997).  Accordingly, there was no error in the admission of the drop-off provision in the sixth edition, 780 Code Mass. Regs. § 1016.5.1 (1997), to shed light on the question whether the defendant maintained the walkway in a reasonably safe condition at the time of the accident.

Perry, 2004 WL 2026820, at *1.

The government suggests that the Court should afford little weight to the Massachusetts Appeals Court's unpublished decision in <u>Perry</u>, citing instead to <u>Matteo v. Livingstone</u>, 666 N.E.2d 1309, 1312 (Mass. App. Ct. 1996), a published appeals court decision that refused to look to a modern building code in determining the duty of care of a landowner whose property was governed by an older code.  However, <u>Matteo</u>'s discussion of the old-versus-new code issue was arguably dicta.  The court first held that the injuries the plaintiff sustained as a result of his reckless conduct (purposely riding a bike off a porch without a railing) were not the type of negative consequences that the building codes were intended to prevent.  666 N.E.2d at 1311-12. Only after reaching this conclusion, which was sufficient to affirm the trial judge's decision, did the court go on to discuss the "grandfathering" issue presented by the case at bar.

Regardless of whether <u>Matteo</u>'s discussion of the issue was mere dicta, the Court concludes that the appeals court's later decision in <u>Perry</u> has the better of the argument.  Building codes are adopted because regulators believe that the costs of complying with the codes are outweighed by the resulting public benefits. Regulators might choose to exempt existing buildings from new codes because, in the mine run of cases, the costs of modifying the buildings, which were constructed to comply with older codes, would outstrip the benefits to be gained from modernization.  However, the fact remains that new codes are evidence of what regulators believe is conducive to public safety.  And in individual cases, these safety benefits might outweigh the cost of compliance even for existing buildings.  Thus, modern building codes are relevant to the Court's task of determining whether a landowner has taken all reasonable, cost-justified precautions to protect against injury to others, regardless of whether the codes explicitly apply to the landowner or not.  <u>See</u> <u>United States v. Carroll Towing Co.</u>, 159 F.2d 169, 173 (2d Cir.

1947) (setting forth the famous Hand formula, which equates negligence with a failure to take precautions that are justified in light of the gravity of the injured party's injury, the probability of injury absent precautionary measures, and the cost of taking adequate precautions).

To be sure, a landowner's violation of a modern building code that does not explicitly apply to him is not negligence per se, but it may be *some evidence* of negligence, especially when combined with evidence that it would have cost the landowner little to take the precautionary steps set forth in the modern code. In this sense, modern requirements serve as a sort of guide or landmark for a court that is struggling with the often difficult task of determining the scope of a landowner's duty to individuals who lawfully enter his property. Even if the modern codes cannot fully bind a landowner who benefits from a grandfather clause, they can highlight precautions that a reasonable landowner would take because the precautions' benefits outweigh their costs.

Even assuming that the Court can look to modern building codes as some evidence of the standard of care that the United States owed Ms. McNaught, however, the United States' failure to provide an intermediate handrail would not have been a breach of its duty to Ms. McNaught if such a handrail would have interfered with patrons' means of entering and exiting the building or would have involved an unreasonable cost. The plaintiff's own expert, Walter B. Adams, conceded that a center handrail might have necessitated a redesign of the Post Office's doors. Without a cost estimate and with only the vaguest sense of what such a redesign would have entailed,[6] I cannot conclude that the defendant breached its duty to the plaintiff by not providing intermediate handrails.

---

[6] See supra note 2.

Finally, the plaintiff has also failed to prove that the absence of an intermediate handrail was the proximate cause of her injuries. The testimony and evidence presented at trial, including the testimony of Ms. McNaught and eyewitness Wendy Pruell and the evidence of Ms. McNaught's size and weight, indicate that her fall was totally uncontrolled. No handrail would have made a difference. It would not have broken her fall; indeed, her injuries could have been exacerbated if her head or body collided with the handrail during her trip down the stairs.[7] Cf. Selby-Gardner, 2006 WL 2827646, at *4.

## IV.   CONCLUSION

Ms. McNaught's fall was unfortunate, and she has clearly suffered as a result of it. But the law only imposes liability on a defendant when the plaintiff has proved the elements of a tort by a preponderance of the evidence. I find that Ms. McNaught has not done so.

**For all of the above reasons, I find for the DEFENDANT, the United States of America.**

**SO ORDERED.**

**Date:   December 22, 2009**          /s/ Nancy Gertner
                                    **NANCY GERTNER, U.S.D.C.**

---

[7] The defendant has suggested that Ms. McNaught was contributorily negligent because she was overtired, over-medicated, and overweight. On this issue, the defendant has the burden of proof, and it has not met it. Mass. Gen. Laws ch. 231, § 85. Under Massachusetts' "modified" comparative negligence rule, a victim who has departed from the standard of reasonableness must bear some of the costs of her injuries. Id.; see also Shantigar Found. v. Bear Mountain Builders, 804 N.E.2d 324, 332 (Mass. 2004) (noting that Massachusetts has adopted a "'modified' comparative negligence rule"). Ms. McNaught did not remotely depart from the standard of reasonableness. She was going about her business as would any citizen. The citizens that the Post Office necessarily serves are healthy and unhealthy, old and young, and of all sizes and backgrounds. They are people who go to the Post Office after a long, hard week of working, as did Ms. McNaught. They are people with all kinds of infirmities. Our postal service, as the tort expression goes, "takes the victims" as it finds them. The most the record suggests is that Ms. McNaught should have used the side handrails out of an abundance of caution.